UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HATTIE TANNER,

    Plaintiff,

v.

DAVID A. WALTERS, et al.,

    Defendants.
_____/

Case No. 1:19-cv-849

Honorable Hala Y. Jarbou

**OPINION**

This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff Hattie Tanner spent 17 years in prison for a wrongful murder conviction.  (First Am. Compl., ECF No. 24, PageID.152.)  She alleges two Defendants are responsible for her wrongful conviction: (1) David Walters, a police officer who investigated the crime; and (2) the City of Battle Creek, who employed Walters.  Tanner claims that Walters fabricated incriminating evidence and withheld exculpatory evidence to secure her conviction, and that Battle Creek failed to provide any police training on how such conduct would be unconstitutional.  Before the Court is Battle Creek's motion to dismiss for failure to state a claim.  The motion will be denied.

**I.  Background**

The following facts are taken from Tanner's first amended complaint and are assumed to be true for the purposes of the present motion.  In March 1995, Sharon Watson was murdered in Calhoun County.  (First Am. Compl., PageID.143.)  Two months later, Walters was assigned to the case and began to investigate Tanner, along with another suspect.  (*Id.*, PageID.144.)  Walters interrogated Tanner in May 1995.  Due to "faulty recording equipment," only a partial transcript

of that interview is available. (*Id.*) Tanner denied involvement: she had never been to the bar where Watson was murdered and was not the owner of the murder weapon. (*Id.*, PageID.144-145.) About two weeks later, Walters conducted a second, unrecorded, two-hour interrogation of Tanner in the back of his squad car as a fellow officer drove them around. (*Id.*, PageID.145.)

According to Walters, Tanner made a series of incriminating statements and admissions during this second interview that directly contradicted the denials she made in the first interview. (*Id.*) Tanner alleges that those statements were fabricated by Walters. Walters submitted these false statements in a report to a local prosecutor. (*Id.*, PageID.146.) This report failed to mention Tanner's previous denials of guilt from the first interview, and also failed to disclose the fact that DNA evidence from the scene, attributable to a female, did not match Tanner's DNA. (*Id.*) The prosecutor declined to bring charges, citing a lack of probable cause. Walters tried to convince successive prosecutors to bring murder charges against Tanner, finally succeeding in 2000. (*Id.*, PageID.146.) At a preliminary hearing, Walters gave false testimony, in which he relayed the fabricated evidence to the presiding judge and failed to disclose exculpatory facts. (*Id.*, PageID.147.)

Tanner was tried and convicted of second-degree murder, felony murder, and armed robbery in November 2000. (*Id.*, PageID.150.) She was sentenced to life in prison without the possibility of parole. In August 2017, the Sixth Circuit Court of Appeals overturned Tanner's conviction, finding insufficient evidence. (*Id.*, PageID.152.) She was released the following month, having spent 17 years in prison.

## II. Standard

When considering a motion to dismiss brought under Rule 12(b)(6), courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.'"

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, courts must accept factual allegations as true, but will reject conclusory statements as "not entitled to the assumption of truth." *Id.* (citing *Twombly*, 550 U.S. at 555-56). Hence, courts will ignore conclusory assertions and, accepting well-pleaded factual allegations as true, determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.* Determining the plausibility of a claim is a "context-specific" inquiry, "requiring the reviewing court to draw on its experience and common sense." *Id.* If the Court decides that there is no plausible claim to relief, then it will grant the motion to dismiss.

### III. Analysis

Tanner brings a *Monell* claim against Battle Creek. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities could be subject to section 1983 actions for alleged constitutional violations, albeit in a narrow set of circumstances. "A municipality may not be held liable under § 1983 on a *respondeat superior* theory – in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691 (emphasis in original)). Tanner must show that "through its deliberate conduct, [Battle Creek] was the 'moving force' behind the injury alleged." *Allman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs*

3

*v. Brown*, 520 U.S. 397, 404 (1997)).  She must prove that Battle Creek had a "policy or custom" that caused a violation of her rights.  *Monell*, 436 U.S. at 694.

A successful *Monell* claim can rest on four different theories of liability, but only one is at issue here: "the existence of a policy of inadequate training or supervision."[1]  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of [a *Monell* claim]."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

However, a *Monell* claim "is at its most tenuous where [the] claim turns on a failure to train."  *Id.*  The failure to train "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  To establish deliberate indifference, a plaintiff must normally show "prior instances of unconstitutional conduct demonstrating that the [municipality] had notice that the training was deficient and likely to cause injury but ignored it."  *Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019) (internal quotations omitted).  In very narrow instances, however, a plaintiff may prove deliberate indifference with "evidence of a single violation of federal rights by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  *Id.* (internal quotations omitted); *Canton*, 489 U.S. at 390.

Here, Tanner seeks to establish deliberate indifference for failure to train solely on the basis of Walters' conduct, i.e., a single violation of federal rights.  The violation in question relates to

---

[1] Plaintiff concedes that, "[a]t this juncture," her sole ground for a *Monell* claim is failure to train.  (Pl.'s Resp., ECF No. 33, PageID.245 n.1.)

4

her *Brady* rights.[2]  Under the Fourteenth Amendment, the police and prosecutors have an obligation to disclose exculpatory evidence in certain situations. *Brady v. Maryland*, 373 U.S. 83, 86 (1963).  Her *Brady* rights were violated when Walters failed to disclose exculpatory evidence to the prosecution or to Tanner herself.  Failure to train on the propriety of withholding exculpatory evidence establishes deliberate indifference in this case. *See Jackson*, 925 F.3d at 836-37 (plaintiff stated valid *Monell* claim based on failure to train where police withheld exculpatory evidence).

Before addressing Battle Creek's arguments, the Court will note that this case falls squarely within the ambit of *Jackson*.  In *Jackson*, the plaintiff was permitted to sue the City of Cleveland for failure to train its police on *Brady* obligations. *Id.*  There, as here, the plaintiff was wrongfully convicted of murder.  There, as here, the police fabricated incriminating evidence and later failed to disclose exculpatory evidence. *Id.* at 804-05.  And there, as here, the plaintiff claimed, not just inadequate training, but a complete absence of police training on *Brady* issues. *Id.* at 835-36.  The *Jackson* court held that the plaintiff had shown deliberate indifference based on failure to train, even though he pointed to a single violation of rights – his own. *Id.*  Thus, the plaintiff's *Monell* claim was permitted to proceed to trial.

Battle Creek argues that Tanner has provided insufficient factual allegations.  That is incorrect.  Tanner has provided allegations that Walters violated her *Brady* rights.  And she has alleged that during the relevant period, Battle Creek provided no *Brady* training to its police *at all*.  (First Am. Compl., PageID.150.)  Battle Creek claims the allegation is entirely false.  But when reviewing a Rule 12(b)(6) motion, the Court treats all well-pled factual allegations in the complaint

---

[2] Paragraph 83 of the Amended Complaint asserts four or five grounds for a *Monell* claim, but makes no reference to a failure to train. (First Am. Compl., PageID.157.)  Paragraph 84, on the other hand, specifically mentions failure to train as "further . . . policies" demonstrating deliberate indifference. (*Id.*)  Because Tanner concedes that she is only seeking a *Monell* claim based on failure to train, the Court will not consider the other potential grounds set forth in paragraph 83 of the Amended Complaint.

5

as true. Contrary to Battle Creek's arguments, the allegation is not conclusory or legal in nature. It is one of pure fact: the city provided police with no training on *Brady* obligations.

Battle Creek next contends that failure to train cannot mean that municipalities are required to provide instructions "to not do what is obviously illegal." (Def.'s Reply Br. 8, ECF No. 34 (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 774 (10th Cir. 2013)).) It is correct. Hence, failure to train cannot be used to establish deliberate indifference based on a single incident of misconduct where that misconduct is fabricating evidence or lying in court. But *Brady* violations are not necessarily obvious violations of the law. As the Supreme Court has said, "[t]here is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force." *Connick*, 563 U.S. at 64. If the police require training on when it is constitutionally appropriate to shoot a fleeing suspect, then surely training is also needed regarding when the state must, or need not, disclose exculpatory evidence to criminal defendants. The Sixth Circuit held exactly that in *Jackson*. 925 F.3d at 835-36.

Battle Creek further argues that its motion must be granted because it was not on notice of constitutional violations since the issue here involves a single instance of illegal conduct. Legally, municipalities are on notice when they fail to provide any training to its employees on how to handle recurring situations presenting an obvious potential for constitutional violations. *Connick*, 563 U.S at 64. *Brady* violations are an obvious potential for police investigating crimes that yield prosecutions. *See Jackson*, 925 F.3d at 835-36. Battle Creek was on notice.

Finally, the city argues that Tanner has failed to demonstrate causation. The crux of its argument is that Walters was a rogue actor bent on convicting Tanner – to the point of fabricating evidence and committing perjury – such that no training would have prevented willful and knowing violations of the law by Walters. It is true that a plaintiff must prove the municipality's

6

policy (or lack thereof) caused the violation in question.  *Monell*, 436 U.S. at 694; *Bd. of Cnty. Comm'rs*, 520 U.S. at 404 (municipality must be 'moving force' behind the injury).  But egregious misconduct did not affect the viability of the *Monell* claim in *Jackson*.  There, the police also fabricated evidence.  And one officer testified that, with respect to Cleveland's police culture, "winning the case was what it was all about. It wasn't about what was fair, it wasn't about what was honest, it was about winning." *Jackson*, 925 F.3d at 837.  The *Jackson* court nevertheless concluded that the failure to train on *Brady* obligations caused the plaintiff's constitutional violation.  Tanner has adequately pleaded causation.

## IV. Conclusion

Simply put, Battle Creek cannot get around *Jackson*, which is squarely on point.  The motion to dismiss (ECF No. 29) will be denied.  An order will enter in accordance with this Opinion.

Dated:   February 1, 2021               /s/ Hala Y. Jarbou
                                        HALA Y. JARBOU
                                        UNITED STATES DISTRICT JUDGE